**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| ALBERT LEW, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. CCB-09-CV-3162 |
| | : | |
| PIZZA HUT OF MARYLAND, INC. | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM
FOR ORDER APPROVING
<u>FAIR LABOR STANDARDS ACT SETTLEMENT</u>**

**I.   INTRODUCTION**

The parties to this Fair Labor Standards Act ("FLSA") collective action, Plaintiff Albert Lew, *et al.*, ("Plaintiffs") and Defendant Pizza Hut of Maryland ("Pizza Hut" or "Defendant"), have reached a settlement resolving this litigation. Because claims for unpaid wages arising under the FLSA may be settled or compromised only with the approval of the District Court or the Secretary of Labor, *see Taylor v. Progress Energy, Inc*., 493 F.3d 454, 460 (4th Cir. 2007), Plaintiffs respectfully seek an order from this Court approving the settlement.

**II.   STATEMENT OF COMMON OPERATIVE FACTS**

    **A.   Background and Procedural History of this Action**

Plaintiff Lew filed his Complaint on November 25, 2009 alleging that he worked as a Manager in Training ("MIT") and as an Assistant Manager ("AM") at various Pizza Hut restaurant locations owned and operated by Defendant.  Plaintiff alleged that Pizza Hut failed to pay him and other similarly situated employees an overtime premium in accordance with the Fair

Labor Standards Act, 29 U.S.C. § 201 et seq., for the time they spent working over 40 hours in a given workweek.

Pizza Hut operates 46 restaurants throughout the state of Maryland. *See* the Parties' Joint Motion for Conditional Certification, may 10, 2011 (Dkt. No. 58). A typical Pizza Hut restaurant has a Restaurant General Manager ("RGM") and at least one Assistant Manager. Employees who are being groomed to become RGMs and AMs occupy the MIT job category, generally for up to six months. The MITs are assigned to selected stores for training. Plaintiffs assert that the duties and responsibilities of MITs and AMs are similar. Plaintiffs were paid a salary, and were routinely scheduled to work, and in fact did work more than 40 hours in a workweek. Pizza Hut recorded the hours worked by Plaintiffs through the use of a timekeeping system in each of its locations.[1]

The parties have exchanged significant discovery including Pizza Hut's policies relating to overtime pay for MITs and AMs. Further, Pizza Hut has produced time records and pay rate information for all members of the collective. Plaintiffs' counsel retained a certified public accountant to analyze Pizza Hut's timesheet and payroll data and estimate damages. In late 2010, Plaintiff noticed the 30(b)(6) deposition of Pizza Hut, and Pizza Hut in turn noticed the deposition of Mr. Lew. The parties were in the process of scheduling these depositions in early January 2011 when the possibility of mediation was broached and the depositions were continued.

### B. Mediation and Settlement Negotiation

On January 18, 2011, the parties notified the Court of their intent to mediate this matter. Over the next several weeks, counsel selected a private mediator, John Sands, Esq., and

---

[1] *See* Pizza Hut's Objections and Responses to Plaintiffs First Set of Interrogatories, Response to Interrogatory No. 22, attached as Exhibit C, Dkt. No. 58.

exchanged relevant information via telephone and e-mail relating to the potential settlement of Plaintiff's action. On March 16, 2011, the parties convened in Columbia, Maryland for a day-long private mediation during which Settlement terms were discussed and negotiated. The parties first negotiated relief to the proposed collective, and then separately negotiated reasonable attorneys' fees and expenses with the assistance of the mediator who had been provided with Plaintiffs' counsel's detailed time records. *See* Declaration of Nicholas A. Migliaccio, ¶¶ 4-6, Oct. 28, 2011 ("Migliaccio Dec."), filed concurrently herein.

As a result of the mediation, the parties were able to agree to a settlement, and later proceeded to negotiate specific details of the Settlement Agreement through multiple telephone conferences and e-mail exchanges.[2] The parties have now finalized the Settlement Agreement, which reasonably, fairly and adequately settles and resolves all of Plaintiffs' claims in this action.

### C. The Collective

On May 10, 2011, the parties filed a joint motion for conditional certification which included a proposed notice stating that the "parties have engaged in settlement discussions and are in the process of resolving this litigation by alternative dispute resolution." The Court granted conditional certification on May 24, 2011, and the notice was initially mailed on May 25, 2011 to the approximately 200 individuals who have occupied the AM and MIT positions during the past three years. Thirty-one envelopes containing the notice were returned as undeliverable. Plaintiffs' counsel undertook efforts to locate these individuals by way of a paid online address locator service, and re-sent the notice when and if alternate addresses were available. Migliaccio Dec. ¶ 8. The notice period closed on July 9, 2011, and 42 opt-in Plaintiffs have joined the case.

---

[2] A copy of the Settlement Agreement is attached as Exhibit A to the Migliaccio Dec. Unless otherwise specified, all capitalized terms used in this Memorandum of Law are consistent with the definitions of such terms set forth in the Settlement Agreement.

**III.    TERMS OF THE SETTLEMENT AGREEMENT**

As the result of extensive arm's-length negotiations, the parties have agreed to settle the litigation on the terms set forth in the Settlement Agreement. The Settlement Agreement includes key terms providing monetary relief and attorneys' fees and expenses.

    **A. Relief to the Collective**

Pursuant to the terms of Settlement Agreement, Pizza Hut has agreed to pay the Plaintiff and Opt-in Plaintiffs an Individual Payment Amount calculated in accordance with the method for calculating overtime set forth by the Fourth Circuit in *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351 (4th Cir. 2011). *See* Settlement Agreement, ¶ 5.3(1). The Individual Payment Amount shall cover the three year statute of limitations period, but shall not include liquidated damages. *Id.* Thus, Plaintiff and the 42 Opt-in Plaintiffs will receive 100 cents on the dollar in regular damages, excluding liquidated damages and as calculated under the method approved in *Desmond*, for a three year period of time.

In addition to the substantial monetary relief achieved on behalf of Plaintiffs, Plaintiffs' counsel can inform the Court that Pizza Hut has decided to reclassify all of its AMs and MITs to non-exempt status. That is, AMs and MITs working for Pizza Hut will now be paid overtime for all hours worked in excess of forty (40) per week. For those Plaintiffs who are current employees and for those individuals who become AMs and MITs in the future, there is a clearly quantifiable economic benefit because they will receive overtime compensation for working over 40 hours per week.

    **B. Attorneys' Fees and Expenses and Additional Award to Plaintiff Lew**

Pizza Hut has agreed to pay a total of $216,000 in attorneys' fees and expenses to compensate Plaintiffs' counsel for time and expenses associated with the prosecution of this

action.  *See* Settlement Agreement, ¶ 5.3(2).  Pizza Hut has also agreed to provide an "incentive award" of $4,195.94 to Plaintiff Lew, in addition to his Individual Payment Amount, in exchange for a general release.  *Id*. at ¶ 5.2.

IV.     **ARGUMENT**

        **A.  The Court Should Approve this FLSA Settlement**

The Fourth Circuit has recognized that "there is a judicial prohibition against the unsupervised waiver or settlement of claims" under the FLSA. *Taylor*, 493 F.3d at 460.  Courts recognize, though, that "when a proposed settlement reflects a reasonable compromise over *bona fide* disputes, then court approval promotes the policy of encouraging settlement while protecting an employee's rights under FLSA." *Patterson v. Richmond Sch. of Health & Tech., Inc.*, No. 3:10cv368, 2010 WL 4902046, at * 1 (E.D. Va. Nov.4, 2010) (internal citations omitted).  Settlements are permissible in the context of an FLSA lawsuit because litigation provides some assurance of an adversarial context in which employees are likely to be represented by an attorney who can protect their rights. *Howell v. Dolgencorp, Inc.*, No. 2:09-CV-41, 2011 WL 121912, at * 2 (N.D.W. Va. Jan. 13, 2011).  Indeed, "[t]here is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Lomascolo v. Parsons Brinckerhoff, Inc*., No. l:08-cv1310, 2009 WL 3094955, at * 10 (E.D. Va. Sept. 28, 2009) (internal quotations omitted).

The factors courts typically consider in determining whether a proposed settlement of FLSA claims is fair and reasonable are: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have

represented the plaintiff; (5) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery. *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at * 2 (D. Md. Mar. 23, 2010) (evaluating these factors in approving FLSA settlement); *Patterson*, 2010 WL 4902046, at *1.

### 1. The Extent of Discovery

The parties have engaged in considerable discovery, including exchanging significant volumes of written discovery.  Plaintiffs' counsel conducted substantial investigation of Pizza Hut's classification of AMs and MITs, including interviewing over two dozen putative class members and gathering information about their job duties prior to moving for conditional certification.  Pizza Hut produced complete time and payroll records for all members of the putative collective, and Plaintiffs retained a certified public accountant to comprehensively analyze these records for purposes of reaching a damages estimate.  Thus, because "it is clear that the Parties had adequate time to conduct sufficient discovery to fairly evaluate the liability and financial aspects of [the] case," *Lomascolo*, 2009 WL 3094955, at * 11 (quotations omitted), this factor weighs in favor of approval.

### 2. The Stage of the Proceedings, Including the Complexity, Expense and Likely Duration of the Litigation

When the parties commenced settlement discussions in January 2011, the first phase of discovery, concerning conditional collective certification issues, had not yet closed.  Fact discovery related to the merits remained open, and Pizza Hut had moved to amend its Answer to raise new defenses, which Plaintiff Lew opposed.  In the absence of an approved settlement, the parties would have continued to vigorously litigate the matter.  This fact counsels strongly in favor of approval of the settlement.  *See Lomascolo*, 2009 WL 3094955, at * 11 (approving settlement when "[i]t was also clear that the Defendants intended to defend this action vigorously

. . . "). Further, the parties engaged in "informed arms-length settlement negotiations with the understanding that it would be a . . . costly undertaking to proceed to the trial of this case." *Id.* As such, the settlement should be approved.

### 3.     The Absence of Fraud or Collusion in the Settlement and the Experience of Counsel who Have Represented the Plaintiffs

It is undeniable that the settlement was the result of arm's length negotiations and conducted by experienced counsel for all Parties.  Counsel for both parties have significant experience litigating claims in federal court in general, and FLSA claims in particular. *See* Plaintiffs' Counsel's firm resumes, attached as Ex. B to the Migliaccio Dec.  Thus, the expertise of counsel in litigating cases of this kind demonstrates that they were competent in offering their clients sound legal advice, favoring approval of the settlement.  *See Lomscolo,* 2009 WL 3094955, at * 11 (approving settlement when counsel for the parties were qualified to "evaluate the case and provide competent legal advice to each of their respective clients").

The experience of counsel and involvement of a mediator also demonstrates that the Settlement Agreement was the product of arms-length negotiations between counsel and that fraud and collusion are absent.  *See Howell*, 2011 WL 121912, at * 3 (quoting *Camp v. Progressive Corp.*, 2004 WL 2149079, at * 7 (E.D. La. Sept. 13, 2004) (noting the "presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary").  Finally, the terms of the settlement show that it represented a sound compromise of closely contested issues.

### 4.     The Probability of Plaintiffs' Success on the Merits and the Amount of Settlement in Relation to the Potential Recovery

As detailed above, Mr. Lew and the 42 opt-in Plaintiffs who joined this lawsuit will receive 100 cents on the dollar of regular damages for the overtime they worked, dating back

three years.  Moreover, Pizza Hut has decided to change its practices and will now pay MITs and AMs overtime, a benefit that will continue to accrue to AMs and MITs in the future and that is not reflected in the size of the settlement.  This result is a very favorable outcome for Plaintiffs and other current AMs and MITs.  Contrasted to the certainty of settlement, there was significant uncertainty whether Plaintiffs would prevail on the merits and, if they did, whether there would be a finding of willfulness on the part of Defendants, triggering liquidated damages and extending the reach of the statute of limitations to three years, rather than two years.

      First, uncertainty existed as to whether the court would find that the AMs and MITs were entitled to overtime compensation under the FLSA or whether they fell within the FLSA's executive or administrative exemptions.  In the late 1970's, the U.S. Department of Labor ("DOL") brought suit against Pizza Hut challenging the exempt status of certain Pizza Hut assistant managers.  That lawsuit was settled.  As part of the settlement, the DOL notified Pizza Hut that it had concluded that certain assistant managers not involved in the litigation were exempt under the executive and/or administrative exemptions, and that if the company modified the duties and responsibilities of those assistant managers who were involved in the suit to conform with the duties and responsibilities of the other (exempt) assistant managers, all of the company's assistant managers were be considered exempt by the DOL.  Pizza Hut contends that it did take the action recommended by the DOL and that the duties if its assistant managers have not changed since that time.  It was prepared to argue that this action by the DOL in the late 1970's should be considered a finding that its assistant managers were now exempt under the FLSA based upon their responsibilities and duties.  *See* Pizza Hut's Memorandum of Points and Authorities in Further Support of Defendant's Motion to Supplement Pleading to File Amended Answer and Separate Defenses. Jan. 7, 2011 (Dkt. No. 48).  Pizza Hut has further contended that

it will show that it relied upon this ruling in assigning administrative and executive duties and responsibilities in 1979, and that these practices continue today. *See id.* Indeed, a recent decision in this judicial district found assistant managers who worked for Wendy's exempt under the executive exemption. *See, e.g., Buechler v. DavCo Rest., Inc.*, No. WDQ-09-0227, 2009 WL 3833999 (D. Md. Nov. 16, 2009) (finding Wendy's assistant manager exempt under the executive exemption even when plaintiff testified that "running registers, operating the grill, cleaning the store, and performing other crew tasks occupied 75 percent of his time."). Plaintiffs faced similar risks under the administrative exemption. *See, e.g., Stricker v. E. Off Rd. Equip., Inc.*, 935 F. Supp. 650, 659 (D. Md. 1996) (Blake, J.) ("Even if the plaintiff spent more than half of his workday performing non-exempt work, his primary duty was to manage the store. The plaintiff was responsible for ensuring that the store's sales goals were met, that the store was neither over nor understocked with merchandise, that inventory was ordered in a timely fashion, that the store opened and closed on time, and that customers were satisfied."). Decisions such as these posed very significant challenges to Plaintiffs and raised the specter of outright defeat, if not a split decision in which the court found the assistant manager employees to be exempt, while the managers-in-training were found not to be.

Second, even if Plaintiffs prevailed on the merits, they had a significant burden to carry to secure finding of willfulness, triggering liquidated damages and extending the statute of limitations. The statute of limitations under the FLSA is normally two years. 29 U.S.C. § 255(a). When plaintiffs can demonstrate that the defendant's violation was "willful," however, the plaintiff may recover for the preceding three years. *Id.*; *see also Martin v. Deiriggi,* 985 F.2d 129, 135 (4th Cir. 1992) (stating that plaintiff "may recover an additional year of back wages when a violation is willful"). The Supreme Court has held that violations are "willful" if "the

employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe,* 486 U.S. 128, 133 (1988). Courts in this judicial district have set the standard high for a finding of willfulness, stating that plaintiff's evidence must be strong "such as evidence that the defendant had previously been investigated for FLSA violations, or evidence of a scheme by the employer to cover-up FLSA violations." *Williams v. Maryland Office Relocators*, 485 F. Supp. 2d 616, 621 (D. Md. 2007). As detailed above, Defendant had previously received a favorable ruling from the DOL regarding its assistant managers. Thus, Plaintiffs' ability to strike a compromise on the willfulness issue, in which the statute of limitations reached back three years but liquidated damages were not authorized, represents a significant achievement.

Accordingly, Plaintiffs' counsel submit that they have undertaken the requisite balancing task necessary to reach a settlement, and that they have reached a sound agreement to resolve their bona fide dispute. *See Lomascolo*, 2009 WL 3094955, at * 10 (noting that Courts are entitled to rely on the judgment of counsel for the parties in performing the "balancing task" necessary to reach a settlement, and "absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel.") (*citing Flinn v. FMC Corp*., 528 F.2d 1169, 1173 (4th Cir. 1975); *see also Hoffman,* 2010 WL 1176641 (approving settlement in which plaintiffs "traded off the risk of nonsuccess" for certain, immediate recovery.). The Court should therefore find that this factor weighs heavily in favor of approval.

### B. The Court Should Approve Plaintiffs' Attorneys' Fees and Expenses

The Settlement Agreement also includes a payment for reasonable attorneys' fees and expenses in the amount of $216,000. *See* Settlement Agreement, ¶ 5.3(2). As detailed above, attorneys' fees and expenses were negotiated separately, only after relief to the proposed

collective was negotiated. Because attorneys' fees and expenses were separately negotiated, the requested attorneys' fees and expenses will in no way diminish Plaintiffs' recovery of 100 cents on the dollar for their regular overtime damages, excluding liquidated damages and as calculated under the method approved in *Desmond,* dating back three years.

It is well-settled that in fee-shifting cases the lodestar method – the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate – is "[t]he most useful starting point for determining the amount of a reasonable fee." *Allright Mortg. Co. v. Hill*, 213 B.R. 943, 945 (D. Md. 1997) (Blake, J.) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). While this is a settlement, and Plaintiffs are not prevailing parties seeking to invoke the fee-shifting provisions of the FLSA, Plaintiffs' counsel nonetheless presented their detailed time and expense records of their actual fees and expenses incurred by representing Plaintiff Lew and the other putative Plaintiffs to the mediator during the mediation in accordance with the Local Rules. *See* Migliaccio Dec., ¶¶ 4-6; *see also* Local Rules, App. B(1)(d) (D. Md. 2011) ("[u]pon request by the Judge (or private mediator agreed upon by the parties) presiding over a settlement conference, counsel for all parties (with the exception of public lawyers who do not ordinarily keep time records) shall turn over to that officer (or mediator) statements of time and the value of that time in the 'litigation phase' format provided in Guideline 1.b."). The mediator reviewed Plaintiffs' detailed time and expense records, and oversaw the settlement reached on payment of attorneys' fees and expenses. *See* Migliaccio Dec., ¶ 6. Given the mediator's review of Plaintiffs' detailed time and expense records, and his oversight of the settlement, counsel respectfully submit that the Court should approve the payment of reasonable attorneys' fees and expenses agreed to by Pizza Hut in the Settlement Agreement. *See Howell*, 2011 WL 121912, at * 3 (approving fees and costs as reasonable after reviewing the settlement agreement).

## V. CONCLUSION

For the reasons enumerated above, Plaintiffs believe that the settlement reached is a fair and reasonable compromise of their dispute with Defendant. Plaintiffs respectfully request the Court approve the settlement. Approval will "secure the just, speedy, and inexpensive determination" of this action in accordance with Fed. R. Civ. P. 1.


October 28, 2011                              Respectfully Submitted,

                                              /s/ Nicholas A. Migliaccio
                                              Nicholas A. Migliaccio
                                              Md. Bar No. 29077
                                              Gary E. Mason
                                              Md. Bar No. 15033
                                              MASON LLP
                                              1625 Massachusetts Ave., N.W.
                                              Suite 605
                                              Washington, D.C. 20036
                                              (202) 429-2290 (phone)
                                              (202) 429-2294 (facsimile)

                                              Andreas N. Akaras
                                              Md. Bar No. 14290
                                              The Akaras Law Offices
                                              4423 Lehigh Road, #308
                                              College Park, MD 20740
                                              (301) 864-7763 (phone)
                                              (866) 838-5556 (facsimile)

                                              Seth R. Lesser (*pro hac vice*)
                                              Fran L. Rudich (*pro hac vice*)
                                              KLAFTER OLSEN & LESSER LLP
                                              Two International Drive, Suite 350
                                              Rye Brook, NY 10573
                                              Telephone: (914) 934-92008
                                              Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2011, a true and correct copy of the foregoing document was filed electronically. Notice of the filing was sent by operation of the Court's electronic filing system to all counsel of record. Parties may access this filing through the Court's electronic filing system.

                                        /S/   Nicholas A. Migliaccio
                                           Nicholas A. Migliaccio